FILED

03 MAR 24 PM 1:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 24 2003

United States District Court
Northern District of Alabama
Western Division

| | |
|---|---|
| Great-West Life & Annuity Insurance Co., | ] |
| Plaintiff(s), | ] |
| | ] CV-01-BE-2111-W |
| vs. | ] |
| Frederick Coats, | ] |
| Defendant(s). | ] |

**Memorandum of Opinion**

I.   **Introduction.**

The plaintiff in this action seeks equitable relief under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1191c. Presently before the court are cross-motions for summary judgment. The plaintiff filed its motion for summary judgment on February 13, 2002 [Doc. # 38], and the defendant moved for summary judgment on March 6, 2002 [Doc. # 47]. Also before the court is the plaintiff's motion to consider its motion for summary judgment as against both defendant Coats in this case and defendant Sikes in a case that was consolidated with the instant case but ultimately dismissed by the court. [Doc. # 58.] Finally, the court has for consideration a motion by the plaintiff for leave to submit a supplemental brief in support of its motion for summary judgment. [Doc. # 66.] The issues raised in the motions have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, the plaintiff's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, the plaintiff's motion to consider

72

the motion for summary judgment as against defendant Sikes will be denied as moot, and the plaintiff's motion for leave to submit a supplemental brief will be granted.

## II. Facts.[1]

On January 29, 2000, defendant Frederick Coats received a gunshot wound to the head in an accidental shooting. As a result of his injuries, Mr. Coats received $41,222.12 in benefits from the Employee Welfare Benefit Plan for Employees of Mannington Wood Floors, Inc. ("the Plan"), an ERISA-governed employee benefits plan. These benefits were paid by Great-West Life and Annuity Insurance Company as plan administrator. The Plan provides for subrogation and a right of reimbursement in the event the insured recovers any funds from another party in relation to an illness or injury incurred by the insured. Specifically, the Plan provides:

> An Other Party may be liable or legally responsible to pay expenses, compensation and/or damages in relation to an Illness incurred by a Member.
> . . . .
> Benefits may also be payable under this Plan in relation to the Illness. When this happens, Great-West may, at its option:
> \*      subrogate, that is, take over the Covered Person's right to receive payments from the Other Party. The Covered Person will transfer to Great-West any rights he or she may have to take legal action arising from the Illness to recover any sums paid under the Plan on behalf of the Covered Person.
> \*      recover from the Covered Person any benefits paid under the Plan from any payment the Covered Person is entitled to receive from the Other Party.
> . . .

---

[1] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

> Great-West will have a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the Covered Person receives or is entitled to receive from any [Other Party.]
>
> . . .
>
> **Great-West's first lien rights will not be reduced due to the Covered Person's own negligence; or due to the Covered Person not being made whole; or due to attorney's fees and costs.**

[Doc. # 10, at 2-4 (emphasis in original).]

Mr. Coats, by and through his attorney, Griffin Sikes, Jr., negotiated a settlement with the parties responsible for his injuries. He ultimately recovered $100,000.00 from those individuals. Of this amount, Mr. Sikes distributed $48,500.00 to Mr. Coats on or about May 25, 2001. This sum, together with $1,500.00 previously advanced to Mr. Coats during the pendency of his action against the third parties, represents the entire amount due to Mr. Coats under a contingency fee agreement between Mr. Coats and Mr. Sikes. An additional $25,000.00 of the settlement proceeds, which represent part of the amount due Mr. Sikes as his attorney's fee, remain in the possession of Mr. Sikes, who agreed to hold those funds pending resolution of this litigation.

On August 21, 2001, Great-West filed the instant action against Mr. Coats, seeking reimbursement of the $41,222.12 paid in medical expenses on his behalf. In its amended complaint, Great-West states one claim: a claim for equitable relief under 29 U.S.C. § 1132(a)(3). [Doc. # 10, Am. Complaint.] Specifically, the plaintiff seeks a declaration of its rights, as well as specific performance of the subrogation/reimbursement provision of the Plan, and restitution. Additionally, the plaintiff asked for an award of reasonable attorneys' fees and costs.

On February 26, 2002, Great-West filed a separate complaint against Mr. Sikes, essentially seeking the same relief it seeks of Mr. Coats in the instant action. The two cases were consolidated on March 6, 2002; the court dismissed the action against Mr. Sikes on April 22, 2002 because it perceived the second action as an attempt to circumvent the court's scheduling order in the instant case.

### III. Standard.

When a district court reviews a motion for summary judgment under Federal Rule of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing <u>either</u> genuine issues of material fact <u>or</u> that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party

support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." 477 U.S. at 323 (emphasis in original).

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are

"'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and if the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### IV. Discussion.

#### A. Great-West's motion to consider the motion for summary judgment as against Mr. Sikes.

Because the court dismissed the case against Mr. Sikes on April 22, 2002, Great-West's motion to consider its motion for summary judgment as against both him and Mr. Coats is moot at this time. Therefore, that motion is due to be, and will be, denied as moot.

#### B. Great-West's motion for leave to submit a supplemental brief.

Great-West's supplemental brief was submitted in response to a request by the court for further briefing on the issue of whether any equitable defenses apply to Great-West's claim against Mr. Coats. [Doc. # 66.] Because the motion and brief were submitted in response to a question raised by the court in its April 11, 2002, status conference, the motion for leave to submit a supplemental brief is due to be, and will be, granted.

#### C. The cross-motions for summary judgment.

The parties seem to agree that the outcome of this case hinges on the court's application of the Supreme Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). Therefore, the court will briefly state the facts and the holding of that case.

##### 1. The *Knudson* decision.

Janette Knudson was rendered a quadriplegic by a car accident in June 1992. Pursuant to an ERISA plan, Great-West paid $411,157.11 in medical expenses arising out of the accident. The Plan at issue in *Knudson* contained a subrogation provision almost

identical to the one at issue in this case.[2] Ms. Knudson filed a tort action arising out of the car accident against Hyundai Motor Company and other alleged tortfeasors in late 1993. The parties to that action negotiated a $650,000.00 settlement, which allocated $256,745.30 to a Special Needs Trust under California law to provide for Ms. Knudson's medical care, $373,426.00 to attorney's fees and costs, $5,000.00 to reimburse the California Medicaid program, and $13,828.70 (the portion of the settlement attributable to past medical expenses) to satisfy Great-West's claim under the reimbursement provision of the Plan.

Being unsatisfied with this result, Great-West filed suit in the United States District Court for the Central District of California, seeking injunctive and declaratory relief under 29 U.S.C. § 1132(a)(3) to enforce the reimbursement provision of the Plan by requiring Ms. Knudson to pay the Plan $411,157.11 of any proceeds recovered from third parties. The District Court granted summary judgment to Ms. Knudson, which both the Ninth Circuit and Supreme Court affirmed.

The Supreme Court noted initially that the relevant section of ERISA authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief . . . to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). For relief sought under this section to be considered equitable, it must be of a type that was typically available in equity. *Knudson*, 534 U.S. at 210. Because it characterized the plaintiff's claim as one "for money due and owing under a contract," which is "quintessentially an action at

---

[2] One difference between the Plan in *Knudson* and the Plan in this case was that the Plan in *Knudson* did not provide that the right to reimbursement would not be diminished by the fact that the insured was not made whole, or part of his recovery from a third party was owed to his attorney for the attorney's fee.

law," the Court held that the relief sought by the plaintiff was not equitable, and as such, was not authorized under ERISA. *Id.*

While restitution may sometimes be characterized as equitable, and thus an allowable remedy under ERISA, the Court noted that restitution is sometimes more fairly characterized as a legal remedy. *Knudson*, 534 U.S. at 212-13. Specifically, the Court held that restitution is a legal remedy where the plaintiff "could not assert title or right to possession of particular property, but . . . he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* at 213 (quoting 1 Dobbs Law of Remedies § 4.2(1), at 571(2d ed. 1993)). In contrast, where a plaintiff seeks money or property "identified as belonging in good conscience to the plaintiff [that] could clearly be traced to particular funds or property in the defendant's possession," restitution would be said to be an equitable remedy. *Id.* (quoting 1 Dobbs § 4.3(1) at 587-88). The Court concluded: "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff <u>particular funds</u> or property in the <u>defendant's possession</u>." *Id.* at 214 (emphasis added). Because the disputed funds in *Knudson* were not in the defendant's possession, but were rather held in an independent trust organized under state law, the kind of restitution Great-West sought was legal, rather than equitable, and therefore unavailable under ERISA. *Id.*

### 2. **Application of *Knudson* to the instant case.**

The key question in resolving this case, then, is whether the $25,000.00 held in trust by Mr. Sikes, or some or all of the funds that have already been disbursed to Mr. Coats, can fairly be described as "particular funds or property in [Mr. Coats'] possession." *Knudson*,

534 U.S. at 214. Because the court is of the opinion that those funds cannot fairly be so described, it concludes that Great-West seeks legal, rather than equitable, restitution, a remedy not provided for by ERISA.[3] Thus, summary judgment is due to be granted in favor of the defendant.

No authority whatsoever supports the claim Great-West makes to funds that have already been disbursed to Mr. Coats. Indeed, *Knudson* itself holds that to the extent that Great-West seeks to recover funds that have been disbursed to Mr. Coats and are no longer traceable, it seeks legal restitution and its claim is not cognizable under ERISA. *See Knudson*, 534 U.S. at 213. Because the money disbursed to Mr. Coats has been commingled with his other assets, Great-West essentially seeks "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money" – legal restitution. *Id.* (quoting Restatement of Restitution § 160 cmt. a (1936)). *See also id.* ("[W]here the property [sought to be recovered] or its proceeds have been dissipated so that no [identifiable] product remains, [the plaintiff's] claim is only that of a general creditor.") (quoting Restatement of Restitution § 215 cmt. a). Thus, the only money to which Great-West <u>might</u> have a cognizable claim is the $25,000.00 being held in trust by Mr. Sikes pending resolution of this case.

However, while the $25,000.00 in trust is certainly traceable to the settlement proceeds, the court is of the opinion that the money is <u>not</u> fairly characterized as being "in

---

[3] To the extent that the complaint states a claim for specific performance of the subrogation/reimbursement provision of the Plan, it is clear that under *Knudson*, such a claim is legal in nature, and therefore not available under ERISA. *See Knudson*, 534 U.S. at 211 ("Typically, however, specific performance of a contract to pay money was not available in equity.").

the defendant's possession." *See Knudson*, 534 U.S. at 213. While other courts have held that settlement proceeds held in trust by the defendant's attorney could be considered to be in the defendant's possession, *see, e.g., IBEW-NECA Southwestern Health & Benefit Fund v. Douthitt*, 211 F. Supp. 2d 812 (N.D. Tex. 2002); *Great-West Life & Annuity Ins. Co. v. Brown*, 192 F. Supp. 2d 1376, 1381 (M.D. Ga. 2002); *Bauer v. Gylten*, No. A3-00-161, 2002 U.S. Dist. Lexis 7246 (D.N.D. Apr. 22, 2002), those cases are distinguishable from the instant case in one key respect: in those cases, the defendants had some continuing ownership interest in some or all of the funds held by the attorneys. In contrast, Mr. Coats has no interest whatsoever in the funds held by his attorney; no one disputes that those funds represent a portion of the attorney's fee to which Mr. Sikes is entitled pursuant to the contingency fee agreement between Mr. Sikes and Mr. Coats. Mr. Coats has received from the settlement proceeds all that he is entitled to receive; therefore, the traceable funds remaining in the possession of Mr. Sikes cannot fairly be described as being "in [Mr. Coats'] possession." *Knudson*, 534 U.S. at 213. As such, the plaintiff's claim for restitution is more properly described as one for legal restitution, and is therefore unavailable under ERISA.

The plaintiff argues that the fact that Mr. Coats himself has no ownership interest in the money held by Mr. Sikes should have no bearing on the outcome of this case because of language in the Plan. Specifically, the Plan provides that "Great-West's first lien rights will not be reduced . . . due to attorney's fees and costs." [Doc. # 10, at 4.] However, the court is not convinced that this language controls the particular dispute before it. Granted, the provision to which the plaintiff points would be enforceable to limit the ability of the

defendant to set-off the amount he would be required to reimburse the plaintiff out of settlement funds in his possession, see, e.g., *Blue Cross & Blue Shield of Ala. v. Sanders*, 974 F. Supp. 1416, 1422 (N.D. Ala. 1997); however, it has no application where the plaintiff seeks funds that are neither in the possession of, nor owned by, the defendant. The Plan language, which controls the distribution of assets in the defendant's possession as between the plaintiff and the defendant, cannot transform what is otherwise a claim for legal restitution into one for equitable restitution. The provision does not change the ultimate fact that the money being held in trust is in no way possessed nor owned by Mr. Coats. As such, notwithstanding the language in the Plan, the remedy sought by Great-West is legal, rather than equitable, restitution. As such, it is not allowable under ERISA, and summary judgment in favor of the defendant, therefore, is appropriate.

### 3. Great-West's claim for equitable restitution.

However, even if the court concluded that the type of restitution sought by Great-West were equitable, that conclusion alone does not necessarily lead to a finding that Great-West is entitled to such relief. Restitution is available only in favor of "[a] person who has been unjustly enriched at the expense of another." Restatement (First) of Restitution § 1 (1937). *See also id.* cmt. c ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."); *First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1553 (11th Cir. 1992) ("Restitution is an equitable remedy designed to restore to a plaintiff something of value that is wrongfully in the possession of another.") (emphasis added); *Health Cost Controls v. Skinner*, 44 F.3d

535, 538 n.7 (7th Cir. 1995) ("Restitution and constructive trust are remedies available only when one party has been unjustly enriched at another's expense.").

Even if the court were to classify the money held by Mr. Sikes as being in the possession of Mr. Coats, the court is not convinced that Mr. Sikes' retention of that money, in payment for working to generate the settlement funds, amounts to Mr. Coats' being unjustly enriched so as to justify the use of the remedy of restitution.[4] The court is of the opinion that Great-West has not established its entitlement to equitable restitution notwithstanding the language of the Plan establishing Great-West's entitlement to full reimbursement and abrogating the application of the "make whole" and "common fund" doctrines. This is so because restitution as a remedy for unjust enrichment arises in equity and is therefore wholly separate from the contractual rights and duties of the parties. *Cf. Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp, ITT*, 139 F.3d 1396, 1413 (11th Cir. 1998) ("Recovery on a theory of unjust enrichment, however, is only available 'when as a matter of fact there is no legal contract.'") (citation omitted). Because the court is not convinced that Mr. Coats would be unjustly enriched if the funds in trust remained in the possession of Mr. Sikes, it concludes that even if the remedy sought by Great-West in this case were equitable restitution, Great-West has failed to establish its entitlement thereto. As such, Great-West's motion for summary judgment is due to be, and will be, denied; and Mr. Coats' motion is due to be, and will be, granted.

---

[4] Indeed, it seems laughable to state that Mr. Coats would be unjustly enriched by keeping settlement proceeds, and paying his attorney for work done in connection with a lawsuit, arising out of injuries related to a gunshot wound to the head.

## V. Conclusion.

In sum, the plaintiff's motion to consider the motion for summary judgment as against Mr. Sikes will be denied. The motion for leave to submit a supplemental brief will be granted. The plaintiff's motion for summary judgment will be denied, and the defendant's cross-motion for summary judgment will be granted. The court will enter a separate order in conformity with this memorandum of opinion.

Done, this 24th of March, 2003.

Karon O. Bowdre
United States District Judge